IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ALTEC INTEGRATED SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> POSEIDON PRODUCTIONS, INC., et al., <br><br> Defendants. | § § § § § § § § § § § § § § Case No. 6:24-cv-347-JDK |

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

This is a case alleging breach of contract and fraud. Plaintiff Altec Integrated Solutions, Ltd., filed suit against Defendants Poseidon Productions, Inc., d/b/a Extreme Engineering and Extreme Legacy Limited, LLC, seeking damages arising out of contractual agreements to design and build amusement park equipment. Docket No. 11. Extreme Engineering and Extreme Legacy independently move to dismiss Altec's amended complaint on several grounds. Docket Nos. 15; 20.

As explained below, the Court denies Defendants' motions, except with respect to the fraudulent inducement claim, which the Court dismisses without prejudice.

**I.**

Altec manufactures machinery in the amusement park industry. Docket No. 11 ¶ 16. Extreme Engineering is a design and fabrication firm. *Id.* ¶ 17. Altec entered into four contracts (the "Contracts") with Extreme Engineering for the fabrication of custom steel structures (the "Project"). *Id.* ¶¶ 20, 23. Altec alleges that

1

Extreme Engineering was awarded the Project based on several misrepresentations about its own qualifications, resources, and ability to meet deadlines. *Id.* ¶¶ 21–22. Altec alleges that Extreme Engineering missed deadlines, failed to meet contract specifications, mismanaged funds, and continued making misrepresentations along the way to hide the shortcomings. *Id.* ¶¶ 26–33. Altec claims that it incurred more than one million dollars in damages. *Id.* ¶ 35. Altec further alleges that Extreme Legacy is the corporate successor to Extreme Engineering and is thus responsible for its acts and debts. *Id.* ¶¶ 58–65.

Altec brings claims for (1) fraudulent inducement, (2) string-along fraud, (3) breach of contract, (4) exemplary damages, and (5) attorneys' fees. *Id.* ¶¶ 36–57. And in the event that Altec's successor liability theory against Extreme Legacy fails, Altec brings an alternative claim for fraudulent transfer of assets. *Id.* ¶¶ 66–71.

Defendants each move to dismiss the amended complaint on forum non conveniens grounds and for failure to state a claim. Docket Nos. 15; 20.

## II.

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, a court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020) (citation omitted). Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must "make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565

F.3d 180, 186 (5th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 9(b), a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires that the plaintiff specify the particulars of time, place, and contents of the false representations," *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (cleaned up), by alleging the "who, what, when, where, and how," *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

### III.

Although Defendants filed separate motions, their arguments largely overlap. The consideration of three arguments resolves both motions: (A) dismissal based on forum non conveniens; (B) dismissal of Altec's theory of successorship liability; and (C) dismissal of Altec's fraud claims. Each is addressed in turn.

### A.

Defendants first argue that this case must be dismissed on grounds of forum non conveniens. Docket No. 15 at 2–4; Docket No. 20 at 8–9. Specifically, Defendants rely on forum-selection clauses ("FSC") in the Contracts, which they argue require Altec's claims to be decided in state court. *See* Docket No. 15 at 3–4.

The "proper mechanism to enforce an FSC that calls for litigation in a domestic state court or in a foreign court is through a motion to dismiss on grounds of [forum non conveniens]." *Weber v. PACT XPP Techs.*, 811 F.3d 758, 766 (5th Cir. 2016); *Atl.*

3

*Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). But "[o]nly mandatory clauses justify transfer or dismissal." *Weber*, 811 F.3d at 768.

The Fifth Circuit "recognizes a sharp distinction between mandatory and permissive FSCs." *Id.* "A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum." *Id.* A "permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum." *Id.* "An FSC is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum—and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make an FSC mandatory." *Id.*; *see also City of New Orleans v. Mun. Admin. Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) ("For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. . . . Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction.").

FSCs that merely submit the parties to jurisdiction in a particular venue are permissive. *See City of New Orleans*, 376 F.3d at 504 (finding an agreement to "consent and yield" to state court jurisdiction was permissive); *Shree Veer Corp. v. OYO Hotels, Inc.*, 2021 WL 8323670, at *1–2 (N.D. Tex. June 21, 2021) (finding an agreement stating that Dallas County "shall have jurisdiction to adjudicate the matter" was permissive); *Waste Mgmt. of Louisiana, LLC v. Jefferson Par.*, 48 F.

4

Supp. 3d 894, 911–12 (E.D. La. 2014) (finding an agreement to "submit to the jurisdiction" of a state court was permissive). Mandatory FSCs, on the other hand, require stronger language such as submitting to "exclusive" jurisdiction. *See Argyll Equities LLC v. Paolino*, 211 Fed. App'x 317, 318–19 (5th Cir. 2006) (finding an agreement consenting to "exclusive jurisdiction" of state courts to be mandatory); *Profrac Holdings II, LLC v. Kuzov*, 2024 WL 3581985, at *1–2 (N.D. Tex. July 30, 2024) (finding an agreement to "submit[] to the exclusive jurisdiction" of state courts to be mandatory).

Here, each of the Contracts includes the following provision under the heading "Governing Law":

> The Parties irrevocably submit to the jurisdiction of any district court located in Henderson County, Texas to decide any dispute regarding either Party's rights or obligations under the Agreement.[1]

*E.g.*, Docket No. 4-2 at 5. This language is permissive. The parties merely "submit to the jurisdiction" of Henderson County courts. *See Jefferson Par.*, 48 F. Supp. 3d at 912. The Contracts say nothing about "exclusive" jurisdiction. *See Paolino*, 211 Fed. App'x at 319. Nor do they suggest that litigation *must* occur in Henderson County. *See Weber*, 811 F.3d at 758. The Contracts' language does no "more than establish that one forum will have jurisdiction," and therefore is permissive. *See City of New*

---

[1] Extreme Engineering attached the Contracts to its motion to dismiss the original complaint. Docket Nos. 4-2; 4-3; 4-4; 4-5. The parties refer to the Contracts throughout their briefing for the pending motions to dismiss. Although Altec did not attach the Contracts to its amended complaint, the Court considers them because the amended complaint references them and they are central to Altec's claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Altec, moreover, does not dispute the Contracts' authenticity nor argues that the Court should not consider the Contracts at this stage.

5

*Orleans*, 376 F.3d at 504. Because the clauses are permissive, they cannot justify dismissal on grounds of forum non conveniens. *See Weber*, 811 F.3d at 758.

Accordingly, Defendants' motions to dismiss on grounds of forum non conveniens are **DENIED**.

B.

Extreme Legacy argues that Altec fails to plausibly allege a successor liability claim against it. Docket No. 20 at 6–8. Specifically, Extreme Legacy argues that this theory of liability is foreclosed as a matter of law. *Id.* at 8.

"Texas strongly embraces the general rule that a successor entity in an asset transfer is not liable for the grantor's liabilities." *Cortes-Castillo v. One Time Constr. Tex. LLC*, 2023 WL 4566257, at *20 (N.D. Tex. July 17, 2023) (citation omitted); *see also Moore v. Panini Am. Inc.*, 2016 WL 7163899, at *6 (Tex. App.—Dallas Nov. 7, 2016, no pet.). "The limited exceptions to the general rule are: (1) the successor expressly agrees to assume liability or (2) liability conferred by another statute." *Cortes-Castillo*, 2023 WL 4566257, at *20 (citing TEX. BUS. ORGS. CODE § 10.254). Texas law does not permit successor liability based on the "de facto merger" or "mere continuation" doctrines. *See E-Quest Mgmt., LLC v. Shaw*, 433 S.W.3d 18, 24 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

As to the first exception, Altec alleges sufficient facts to sustain a successor liability claim based on express assumption of liability. First, Altec plainly alleges that "Extreme Legacy has assumed the burdens of Extreme Engineering." Docket No. 11 ¶ 60. Altec then alleges oral statements and conduct by Extreme Legacy that reasonably imply that Extreme Engineering was entirely assumed by Extreme

6

Legacy—assets *and liabilities* included.  For example, Altec alleges: (i) Extreme Legacy purchased Extreme Engineering's portfolio of attractions, intellectual property, and "expertise in engineering and design fabrication"; (ii) Extreme Legacy's Chief Development Officer publicly stated that Extreme Legacy is "taking over" Extreme Engineering and is keeping Extreme Engineering's Texas facilities; (iii) the Chief Development Officer did not correct an interviewer's statement that Extreme Legacy was "formerly known as Extreme Engineering"; (iv) Extreme Legacy's leadership team includes several of the same people from Extreme Engineering's leadership team; (v) the website was converted from "www.extremeengineering.com" to "www.extremelegacy.com" and remained mostly the same; (vi) the two logo's are "near identical"; and (vii) Extreme Engineering's Facebook page posted "Breaking News! Extreme Engineering is now Extreme Legacy." *Id.* ¶¶ 60–64.  These allegations sufficiently allege successorship liability based on express assumption. *See Capio Funding, LLC v. Rural/Metro Operating Co., LLC*, 2024 WL 4229289, at *2 (N.D. Tex. Sept. 18, 2024) (upholding a jury verdict for claims based on successorship liability because "an express assumption is not required to be in writing," and the jury was entitled to find express assumption based on oral statements and conduct).

As to the second exception, Altec also alleges a successor liability claim based on liability conferred by another statute.  In Texas, when a corporate merger occurs, "all liabilities and obligations" of the merging corporation are statutorily allocated to the surviving corporation.  TEX. BUS. ORG. CODE § 10.008(a)(3).  Here, Altec alleges that Extreme Legacy was a successor to Extreme Engineering by merger.  Docket

7

No. 11 ¶ 60. And the reasonable inference arising from the same factual allegations laid out above supports Altec's claim. Accordingly, Altec's successorship liability claim survives based on this theory as well.

Extreme Legacy takes issue with several of the factual allegations made by Altec. *See, e.g.*, Docket No. 22 at 3–4 (arguing that § 10.008(a)(3) does not apply because no corporate merger occurred); Docket No. 20 at 7 (similar); Docket No. 22 at 4 (arguing that the allegations relating to promotional materials and public statements were made *before* any proposed purchase occurred). But factual disputes are not properly resolved by the Court at this stage. *See, e.g.*, *Pearson v. Gage*, 2023 WL 6149155, at *7 (N.D. Tex. Sept. 19, 2023) (explaining that "[a]t the motion to dismiss stage, the Court is not concerned with deciding factual disputes").

Accordingly, Extreme Legacy's motion to dismiss Altec's successorship liability claim is **DENIED**.

## C.

Defendants seek dismissal of Altec's claims for fraudulent inducement and string-along fraud. Docket No. 15 at 4–7; Docket No. 20 at 4–6. Defendants first argue that Altec's fradualent inducement claim is barred by the Contracts. Docket No. 15 at 4; Docket No. 20 at 4. Defendants then argue that Altec fails to plausibly allege either fraud claim. Docket No. 15 at 5–7; Docket No. 20 at 5–6.

The Court addresses the fraudulent inducment claim, and then turns to the claim for string-along fraud.

1.

"[A] clause that clearly and unequivocally expresses the party's intent to disclaim reliance on the specific misrepresentations at issue can preclude a fraudulent-inducement claim." *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019). But "[n]ot every such disclaimer is effective." *Id.* To determine whether such a bar is effective, courts "must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding." *Id.* (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008)). Courts look to factors such as whether: "(1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other at arm's length; (4) the parties were knowledgeable in business matters; and (5) the release language was clear." *Id.* (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 327 (Tex. 2011)); *see also Forest Oil*, 268 S.W.3d at 60.

The Contracts here each include a clause stating:

> The Parties do not rely on any promise, representation, warranty, or covenant that is not contained in this Agreement or an Exhibit to this Agreement that is expressly incorporated into the Agreement by reference.

*E.g.*, Docket No. 4-2 at 4. Altec's fraudulent inducement claim revolves around "numerous representations" by Extreme Engineering that it had the necessary qualifications and abilities to successfully complete the Project—representations that

allegedly induced Altec to sign the Contracts. *See* Docket No. 11 ¶ 21. But the Contracts' disclaimer-of-reliance provision expressly disclaims reliance on any external representations. And nearly all of the *International Business Machine* factors favor preclusion of the fraudulent inducement claim here. As to factors two and three, the Contracts explicitly acknowledge that the parties were represented by counsel and engaged in "protracted arm's length negotiation." *E.g.*, Docket No. 4-2 at 4. As to factor four, Altec alleges it has operated in its industry for over twenty-five years. Docket No. 11 ¶ 16. And as to factor five, the Contracts clearly and unambiguously disclaim reliance.

Other courts applying Texas law have not hesitated to dismiss fraudulent inducement claims under similar circumstances. *See, e.g.*, *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 538 (W.D. Tex. 2021) (granting a motion to dismiss a fraudulent inducement claim based on a similar disclaimer provision because the "provision provide[d] a clear and unequivocal intent to disclaim reliance"); *Beauty MedSpa, Inc. v. FPG The Point LP*, 2021 WL 4991998, at *2, *4 (N.D. Tex. Oct. 27, 2021) (similar); *Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 296 (5th Cir. 2016) (affirming the dismissal of a fraudulent inducement claim because the contract was "sufficiently clear as to disclaim any reliance by Plaintiffs on any alleged misrepresentation . . . made prior to Plaintiffs entering into the contract"). It is appropriate to do the same here.

Altec asks for leave to amend its complaint to cure any deficiencies. Docket No. 18 at 18. To the extent a fraudulent inducment claim can be pleaded despite the

Contracts' disclaimer-of-reliance provision, Altec is granted leave to amend its complaint. *See* FED. R. CIV. P. 15(a)(2).

Accordingly, Defendants' motion to dismiss is **GRANTED** on this ground, and Altec's fraudulent inducement claim is **DISMISSED** without prejudice.

**2.**

Altec's string-along fraud claim is alleged under a theory of misrepresentation and a theory of nondisclosure or omission. Docket No. 11 at 12.

Texas law recognizes claims for "string-along or ongoing fraud to induce continued contractual performance as a distinct valid cause of action." *In re Base Holdings, LLC*, 2015 WL 1808536, at *8 n.10 (N.D. Tex. Apr. 21, 2015). Although the claim is called "string-along fraud," a plaintiff must prove the normal elements of fraud. *See Bray Intern., Inc. v. Computer Assocs. Intern., Inc.*, 2005 WL 3371875, at *6 (S.D. Tex. Dec. 12, 2005).

Proving fraud under Texas law requires a plaintiff to establish: "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *CBE Grp., Inc. v. Lexington Law Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018)). "The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's

representation and, also, that such reliance was justifiable." *Id.* (quoting *JPMorgan Chase Bank*, 546 S.W.3d at 653).

"To recover for fraud by omission under Texas law, the plaintiff must prove: (1) the defendant failed to disclose facts to the plaintiff when the defendant had a duty to disclose such facts; (2) the facts were material; (3) the defendant knew of the facts; (4) the defendant knew that the plaintiff was ignorant of the facts and did not have an equal opportunity to discover the truth; (5) the defendant was deliberately silent and failed to disclose the facts with the intent to induce the plaintiff to take some action; (6) the plaintiff relied on the omission or concealment; and (7) the plaintiff suffered injury as a result of acting without knowledge of the undisclosed facts." *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 618 (S.D. Tex. 2012) (citing *United Tchr. Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566–68 (5th Cir. 2005)).

Altec alleges that after entering into the Contracts, "Extreme Engineering repeatedly told Altec that [it] was paying vendors, ordering parts, and fabricating components to meet the deadlines." Docket No. 11 ¶ 26. Altec alleges that in reality, however, Extreme Engineering failed to tell Altec that it "had trouble paying vendors, had not ordered parts, could not meet the client's quality specifications, and was behind schedule." *Id.* Altec alleges that Extreme Engineering continued to represent that "everything was fine and provided false Project schedules." *Id.* In addition to delays, Altec alleges that after discovering some of Extreme Engineering's misrepresentations, it incurred additional costs from ordering rushed parts and

12

providing quality controls that Extreme Engineering lacked. *Id.* ¶ 27. Altec alleges that Extreme Engineering "never disclosed the extent and nature of the manufacturing deficiencies and ordering delays," which led Altec to justifiably rely on Extreme Engineering's misrepresentations and nondisclosures by agreeing to continue paying the firm. *Id.* ¶ 28.

Altec further alleges that in October 2023, "Extreme Engineering promised Altec that it was on schedule for wiring and testing the four structures by December 22, 2023, with limited changes to the initial costs." *Id.* ¶ 29. Extreme Engineering allegedly repeated the promise again when Altec visited the worksite. *Id.* ¶ 30. What Extreme Engineering did not tell Altec, however, is that "Extreme Engineering falsified most of the Project schedules." *Id.* As a result, when the end of December rolled around, Altec alleges it was surprised to find that the Project was far from complete, resulting from Extreme Engineering's failure to devote adequate time, employees, and financial resources to it. *Id.* ¶¶ 31–33. Extreme Engineering allegedly knew it was behind schedule but made the misrepresentations and omissions to continue collecting payments from Altec. *Id.* ¶ 26.

Altec sufficiently pleaded string-along fraud by misrepresentation and omission. *See CBE Grp.*, 993 F.3d at 350; *Berge Helene*, 896 F. Supp. 2d at 618. Altec's allegations include the "who, what, when, where, and how" necessary to support its fraud claims. The falsification of the Project schedules is a particularly problematic allegation for Extreme Engineering to overcome at this stage. *See Saima Haroon v. Erbe Inc.*, 2025 WL 1168281, at *7 (S.D. Tex. Apr. 22, 2025) (finding a

defendant's "financial motive and efforts to conceal" were "sufficient at [the 12(b)(6) stage] to plead fraudulent intent"); *United States v. Hall*, 756 F. App'x 439, 441–42 (5th Cir. 2019) (per curiam) (explaining, in the criminal context, that efforts to conceal can support an inference of fraudulent intent). Dismissal for failure to state a claim is therefore inappropriate.

## IV.

Accordingly, Defendants' motions to dismiss (Docket Nos. 15; 20) are **GRANTED IN PART** and **DENIED IN PART**. The motions are **GRANTED** as to Altec's fraudulent inducment claim, which is **DISMISSED** without prejudice. The motions are **DENIED** on all other grounds.

So **ORDERED** and **SIGNED** this **27th** day of **May, 2025.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE